STATE OF CONNECTICUT *v.* NOEL DAVILA
(AC 21760)
(AC 21900)

Bishop, West and Hennessy, Js.

---

Argued December 2, 2002—officially released March 11, 2003

*David B. Rozwaski,* for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Stephen J. Sedensky III,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant in these consolidated appeals, Noel Davila, appeals from the judgments of conviction, rendered following jury trials,[1] of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21, reckless endangerment in the first degree in violation of General Statutes § 53a-63, criminal possession of a firearm in violation of General Statutes § 53a-217, carrying a pistol without a permit in violation of General Statutes § 29-35 and possession of narcotics in violation of General Statutes § 21a-279 (a).[2] On appeal, the defendant challenges (1) the sufficiency of the evidence supporting the conviction for risk of injury to a child, (2) the sufficiency of the evidence

---

[1] In his first trial, the defendant was convicted of possession of narcotics in violation of General Statutes § 21a-279 (a). He has appealed from the judgment of conviction. At that trial, in which he was acquitted of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a, the jury was deadlocked as to the remainder of the charges, and the court declared a mistrial. On retrial, the defendant was convicted of the charges that led to the mistrial. He then filed a separate appeal from that judgment of conviction. This court thereafter ordered the appeals consolidated.

[2] We note that although the defendant's consolidated appeals purport to challenge, inter alia, the judgments of conviction on the charges of criminal possession of a firearm in violation of General Statutes § 53a-217, carrying a pistol without a permit in violation of General Statutes § 29-35 and possession of narcotics in violation of General Statutes § 21a-279 (a), he has not briefed those claims and, accordingly, we deem them abandoned. See *Annunziata* v. *Commissioner of Correction,* 74 Conn. App. 9, 13, 810 A.2d 287 (2002).

supporting the conviction for reckless endangerment in the first degree and (3) the court's denial of his motion in limine seeking to exclude evidence of crimes for which he had been acquitted previously.

The jury reasonably could have found the following facts. Angela Velez, Julio Alvarez and five minor children resided in a first floor apartment at 203 Calhoun Avenue in Bridgeport. On the afternoon of May 1, 1999, the defendant, wearing a black, long sleeved, hooded sweatshirt, appeared at the back door of the victims' apartment and asked Velez if he could speak to Alvarez.[3] Velez refused the defendant's request because Alvarez was having lunch at that time. The defendant then brandished a pistol and attempted to force his way into the apartment. Velez called out to Alvarez that somebody was trying to break into the apartment. Unsuccessful in his attempt to gain entry, the defendant fired several gunshots into the apartment through various first floor windows. During the shooting, Velez gathered the five children together and fled the apartment, bringing the children to a nearby liquor store. The owner of the liquor store called the police, who arrived at the scene shortly thereafter.

The defendant, meanwhile, fled on foot to his sister's apartment, which was not far from the scene of the shooting. Once at the apartment, the defendant changed shirts and hid the pistol under the cushions of the living room sofa. Police apprehended the defendant at the apartment, where they also recovered the weapon and the sweatshirt. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence presented at trial was insufficient to support his conviction

---

[3] The defendant asked for Alvarez, using his nickname, "Matruki."

of risk of injury to a child. Specifically, he argues that (1) there was no evidence that he was aware that there was more than one child in the home when the gunshots were fired, (2) there was no evidence that any of the children sustained actual injuries and (3) the testimony of the mother establishes that the children already had fled to a neighboring liquor store by the time that the gunshots were fired. Those arguments are unavailing.[4]

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Morgan*, 70 Conn. App. 255, 282, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002).

## A

We first address the defendant's argument that the evidence was insufficient to support his conviction for

---

[4] As an initial matter, we reject the defendant's attempt to characterize Velez's testimony as establishing that the children had fled the apartment prior to the commencement of the shooting. Although the statement that Velez gave to the police at the time of the incident suggested that she and the children already were at the liquor store when the shooting began, Velez's testimony at trial indicated that the children were present in the apartment when the shooting began. As the sole arbiters of the credibility of witnesses, it was within the jury's province to resolve any apparent discrepancy between those statements. *State* v. *Alvarado*, 62 Conn. App. 102, 110–11, 773 A.2d 958, cert. denied, 256 Conn. 907, 772 A.2d 600 (2001). The verdict indicates that the jury chose to credit Velez's testimony. We conclude that the evidence was sufficient for the jury to have found that all five of the children were in the apartment at the time that the defendant fired the gunshots.

risk of injury to a child because there was no evidence that any of the children sustained actual injuries.

General Statutes (Rev. to 1999) § 53-21 provides in relevant part that "[a]ny person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony." "[T]he charge of risk of injury to a child does not require proof of an actual injury, but only that the actions of the defendant exposed the victim to a situation that potentially could impair his health." *State* v. *Peters*, 40 Conn. App. 805, 828–29, 673 A.2d 1158, cert. denied, 237 Conn. 925, 677 A.2d 949 (1996). The relevant inquiry is whether the defendant committed any act that was likely to endanger the life or limb, or impair the health, of the children, not whether the children actually were injured. "Lack of an actual injury to either the physical health or morals of the victim is irrelevant . . . actual injury is not an element of the offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Sullivan*, 11 Conn. App. 80, 98, 525 A.2d 1353 (1987). "[T]he creation of a prohibited situation is sufficient." *State* v. *Perruccio*, 192 Conn. 154, 160, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984).

In the present case, the jury heard sufficient evidence that, if credited, would support its finding that the defendant's actions created a risk of injury to five children younger than sixteen years of age. Velez testified that all five children were present inside the apartment during the shooting. As the shooting began, the children were gathered in the living room. Police later recovered two bullet fragments from stereo speakers in the living room. The victims' landlord, Fernando Queiroz, testi-

fied that there also were bullet holes in the kitchen and in the bedroom walls. Officer Joseph Hernandez testified that not all of the bullets were recovered because some had lodged in the walls and studs of the apartment, making retrieval difficult. From that evidence, the jury reasonably could have concluded that the defendant's action in firing the pistol into the apartment created a situation that endangered the children present in the apartment.

### B

The defendant also argues that he was unaware of the presence of more than one child in the apartment when the gunshots were fired. That argument is unavailing.

Regardless of whether the defendant knew that the children were in the apartment, the jury reasonably could have found that he violated the statute on the basis of his reckless disregard of the consequences of his actions. It is not necessary, to support a conviction under § 53-21, that the defendant be aware that his conduct is likely to impact a child younger than the age of sixteen years. Specific intent is not a necessary requirement of the statute. Rather, the intent to do some act coupled with a "reckless disregard of the consequences"; *State* v. *Cutro*, 37 Conn. App. 534, 540, 657 A.2d 239 (1995); of that act is sufficient to find a violation of the statute. Id., 539–40. Applying that standard, we conclude, on the basis of the evidence presented at trial, that the jury reasonably could have found that the defendant acted wilfully in firing his pistol into the apartment and that his conduct was of such a character that it demonstrated a reckless disregard of the consequences. See id.

### II

The defendant also claims that the evidence presented at trial was insufficient to support his conviction

of reckless endangerment in the first degree in violation of § 53a-63. We disagree.

The defendant bases his claim on his interpretation of the testimony offered at trial. Specifically, the defendant argues that the testimony establishes that Velez was not in the specific room into which the weapon was fired. Therefore, he argues, Velez never was at risk of injury. We are unpersuaded. The defendant's argument ignores both the evidence presented in the case and the common sense and logic on which jurors are expected to rely in their deliberations.

General Statutes § 53a-63 (a) provides: "A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person." General Statutes § 53a-3 (13) provides: "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ." Thus, the jury had to consider objectively the nature and degree of the risk and the defendant's subjective awareness of that risk. "Subjective realization of a risk may be inferred from a person's words and conduct when viewed in the light of the surrounding circumstances. LaFave and Scott, Criminal Law (2d Ed.) § 30." *State v. Ghiloni*, 35 Conn. Sup. 570, 573, 398 A.2d 1204 (1978).

The defendant was aware that Velez was in the apartment when he began firing his pistol through the windows. Thus, the defendant cannot argue that he was

unaware of the potential risk inherent in his actions. Analyzing the nature and degree of the risk objectively, we conclude that the jury had sufficient evidence to support a conviction. Bullets were recovered from the apartment's kitchen and living room, which had been occupied at various moments during the shooting. Bullet holes also were discovered in the kitchen and in the bedroom walls. In addition, Hernandez testified that bullets tend to travel through walls.

In the present case, we conclude that the jury reasonably could have concluded that the defendant was aware that firing a pistol into an occupied apartment could result in serious physical injury to the occupants and, further, that the nature and degree of that risk reflects an extreme indifference to human life and constitutes a gross deviation from a reasonable standard of conduct.

### III

The defendant's final claim is that the court improperly denied his motion in limine to exclude evidence in support of the charge of assault in the first degree. We decline to review the claim because it is moot in light of the defendant's acquittal of that charge.

The defendant argues that the state's prosecution of the assault charge violated his constitutional right to be free of being placed twice in jeopardy for the same offense. See *State* v. *Butler*, 262 Conn. 167, 174, 810 A.2d 791 (2002). Specifically, he argues that because the evidence relied on to prosecute the assault charge was identical to that used to prosecute him on the attempt to commit murder charge, of which he was found not guilty at his first trial,[5] the state should have been precluded from relitigating those facts under a

---

[5] See footnote 1.

theory of collateral estoppel. See *State* v. *Hope*, 215 Conn. 570, 584, 577 A.2d 1000 (1990) (collateral estoppel is protection included in fifth amendment guarantee against double jeopardy), cert. denied, 498 U.S. 1089, 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991).

In the first trial, the state had charged the defendant with, among other counts, attempt to commit murder and assault in the first degree. The jury acquitted the defendant on the charge of attempt to commit murder, but was deadlocked on the assault charge. The defendant argues that the acquittal amounts to a favorable finding of fact on the evidence presented and that the state should have been collaterally estopped from relitigating those facts during its subsequent prosecution for assault in the first degree.

We conclude, however, that that the issue is moot because the defendant was acquitted on the assault count in the second trial.[6] See *State* v. *Rumore*, 28 Conn. App. 402, 412, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992). Accordingly, we decline to review the claim.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[6] Although the defendant also claims that the state's introduction of evidence relevant to the assault charge was prejudicial to his right to a fair trial on the other charges, he has failed to offer any analysis in support of that claim. Accordingly, we decline to address that claim and deem it abandoned. "[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Citation omitted; internal quotation marks omitted.) *Hill* v. *Bartels*, 73 Conn. App. 588, 589–90, 808 A.2d 1176 (2002).